# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
### CENTRAL DIVISION
### FRANKFORT

Eastern District of Kentucky
**FILED**

SEP 0 3 2009

AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

## CRIMINAL ACTION NO. 08-CR-31-JMH

## UNITED STATES OF AMERICA                    PLAINTIFF

## V.                    **PLEA AGREEMENT**

## RAY GARTON                    **DEFENDANT**

\* \* \* \* \*

1. Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant will enter a guilty plea to Count 1 of the Indictment, charging a violation of 18 U.S.C. § 1349, conspiracy to commit mail and wire fraud. Pursuant to Rule 11(c)(1)(A), the United States will move at sentencing to dismiss Counts 2 through 21.

2. The essential elements of Count 1 are:

    (a) two  or more people agreed,

    (b) to commit the crimes of wire and mail fraud,

    (c) the Defendant knowingly joined the agreement, and

    (d) one of the people agreeing to commit the crimes performed at least one overt act described in the Indictment.

3. As to Count 1, the United States could prove the following facts that establish the essential elements of the offense beyond a reasonable doubt, and the Defendant admits these facts:

(a) The Defendant Ray Garton began working for co defendant Michael Smith, Target Oil and Gas Co. Inc.(hereinafter Target Oil) and Kentucky Indiana Oil and Gas Co. Inc.(hereinafter Kentucky Indiana) in 2000 as a geologist.

(b) As a geologist, Defendant Garton initially prepared geological reports for inclusion in brochures used to provide potential investors information about oil and gas well drilling programs offered for sale by Target Oil and by Kentucky Indiana. These reports initially contained geological information developed by Defendant Garton and his employees based on site specific evaluations. Defendant Ray Garton and his employee would visit the site of the proposed oil or gas well, do a field report and actually stake out the locations on maps of recommended well sites.

(c) After about 2003 and in order to save money, Defendant Michael Smith instructed Ray Garton to no longer perform site specific geological evaluations. Instead, Garton provide regional geologic reports based on quadrangle maps provided to Garton by a contractor. Defendant Garton would pick out the fractures on the lease sites, and maps of those areas where the fractures were believed to be located would be provided to investors. No field report or staking of well sites was performed.

(d) Around 2006, Garton at Michael Smith direction, ceased preparing fracture maps for investors and instead prepared reports containing general geologic information taken from the Kentucky Geological Survey and from other publically available sources. Defendant Garton did not prepare site specific geological reports for proposed well sites.

(e) At some point in late 2006, employees of Michael Smith began preparing geologic reports without input from the Defendant Ray Garton. Michael Smith would pay the Defendant Ray Garton ostensibly for the preparation of these reports.

(f) At no time did the Defendant Garton select well sites for Michael Smith or either of the two companies. At the beginning, Garton would recommend specific sites, but Michael Smith would always make the determination of the final well site. After a period of time, co defendant Michael Smith began telling Defendant Garton that Smith wanted to drill a well or wells at a certain location and wanted to sell partnership interests in an oil and gas well drilling program. Eventually, Defendant Garton stopped preparing geologic reports altogether and the reports incorporated into the brochures provided to investors were prepared by employees of Target Oil and Kentucky Indiana.   One employee, Christopher Holsapple, used geographic information from brochures produced for other wells and other programs and placed it in brochures in the same format as originally used by Defendant Garton, and then forwarded the brochures prepared by Holsapple to Defendant Garton for approval.

2

Defendant Garton knew that employees of Target Oil and Kentucky Indiana were preparing brochures using general geologic information retrieved from previous brochures, and these brochures would be sent out to investors with copies of letters from Defendant Garton to co defendant Michael Smith which recommended that wells be drilled on the locations mentioned in the brochures.

(g) Co defendant Michael Smith would direct the employees of Target and Kentucky Indiana including co defendants Shawn Michael Smith, Joshua Scott Harris, Mark Irwin and Christopher Smith, to send the brochures to potential investors. Defendant Garton knew that these brochures were being sent to potential investors and were for the purpose of inducing potential investors to invest money with co defendant Michael Smith, Target Oil and Kentucky Indiana. The brochures would be sent to potential investors accompanied by a letter from Defendant Ray Garton to co defendant Michael Smith which stated the outstanding potential of the proposed well sites and recommended Michael Smith drill at those locations. Defendant Garton knew that co defendant Michael Smith had already made the decision to drill the wells and that Michael Smith's decision to drill was not based on the Defendant Garton's geological opinion expressed in the letters. These letters were printed on the inside front cover of the brochures. All of these letters and brochures were very similar to each other, and were for the purpose of inducing potential investors to invest in oil and gas well drilling programs.

(h) One of those letters is a letter from Defendant Ray Garton to co defendant Michael Smith recommending that Hurricane Wells #8 and #9 be drilled. This letter, dated September 1, 2005, was placed on the inside front cover of the brochure with general geological information on the geographic area where Hurricane Wells #8 and #9 were to be drilled, and was provided to potential investors for purposes of inducing the investors to buy partnership shares in Hurricane Wells #8 and #9. A copy of this letter and brochure was mailed to investor Hans Kahn in Asheville, North Carolina on or about April 5, 2006, an overt act alleged in Paragraph 12 of Count 1 and in Count 14 of the Indictment against Defendant Ray Garton.

(i) Defendant Ray Garton was an agent of Target Oil and Kentucky Indiana and served as the agent for Target Oil in West Virginia, and assisted co defendant Michael Smith in the oversight of the West Virginia operations. Defendant Ray Garton met with potential West Virginia investors at well sites in West Virginia, answered their questions about the status of the wells, and encouraged them to make additional investments in oil and gas well drilling programs offered by Target Oil and co defendant Michael Smith. Defendant Ray Garton also represented Target Oil with the state of West Virginia regulators on certain regulatory deficiencies and violations.

(j) In January of 2006, Defendant Ray Garton met with investor Vincent R. Guerrieri in the area of Fairmont, West Virginia, and took him to the location of Johnson well #1 and the proposed sites for Whispering Pines wells #1, #2 and #3, as well as the proposed well site for Johnson #2. At that time, Defendant Garton told investor Guerrieri he was an independent geologist who was paid to tell Target Oil where to drill, that he had no other connection to Target Oil, that there were several productive geological formulations under the leased well site, and that drillers had tapped them and had developed commercially successful wells. Defendant Garton encouraged Guerrieri to invest in Whispering Pines wells #1 and #2 because they looked as good as Johnson well #1.

(k) Defendant Ray Garton worked for Target Oil and Michael Smith at the time Target Oil and Michael Smith entered into a Cease and Desist Order with the Commonwealth of Kentucky. In that Cease and Desist Order, Target Oil and its agents were required to have a reasonable belief that all potential investors were accredited investors, to verify in writing the accredited status of each investor, to maintain the verification in its files, to provide each investor with a prospectus or offering circular for each offer or sale of an investment, and that the prospectus or offering circular would contain all material information a reasonable investor would want to know about the offering and the circumstances surrounding the offering. Defendant Garton knew about the Cease and Desist Order and discussed it with co defendants Michael Smith and Christopher Smith. Defendant Garton also knew about regulatory actions taken by other states against Michael Smith, Christopher Smith, and Target Oil and its sales personnel for selling unregistered securities, selling by unregistered broker-dealers and agents, and selling securities without disclosure of all material information.

(l) On or about February of 2004, the Commonwealth of Kentucky Board of Geology and the Defendant Ray Garton entered a Consent Decree which prohibited the Defendant Ray Garton from performing geology work in the state of Kentucky. The Consent Decree arose from Defendant Ray Garton's work performed on behalf of Target Oil and co defendant Michael Smith, and specifically concerned letters and brochures prepared by Garton for potential investors in oil and gas well drilling programs sold by Michael Smith and Target Oil.

(m) Despite the Cease and Desist Order and Consent Decree, the Defendant Ray Garton continued to prepare or approve the preparation for co defendant Michael Smith and his companies, reports containing generalized geological information, and letters recommending the drilling of well sites located in the state of Kentucky, as well as well sites located outside the state of Kentucky. The Defendant Ray Garton also prepared letters for co defendant Michael Smith, Target Oil and Kentucky

4

Indiana to use when requesting completion fees from investors. The letters stated he had independently reviewed the drillers logs from newly drilled wells and had determined that specific wells were commercially viable. The letters recommended that specific wells be completed for commercial production, and accordingly, completion fees be collected from investors.

(n) In truth, Defendant Garton knew it was not possible to determine from a review of well logs whether any particular well would be commercially viable. Defendant Garton knew that it was impossible to determine whether any well could be made commercially viable until the well had been appropriately completed, that is, treated and stimulated to encourage production. Defendant Garton did not put this information in his letters, letters he knew were being sent to the investors. Defendant Garton also knew the track record of co defendant Michael Smith and his companies, that they did not properly treat and complete wells. Defendant Garton also knew of Target Oil and Kentucky Indiana's many deficiencies and violations of state regulations for improperly developing and abandoning wells. Defendant Garton also knew of the two companies' low production rates in previously drilled wells. Defendant Garton did not disclose these facts to investors in his letters recommending that completion fees be collected. Further, Garton did not disclose to investors his role as an agent for Target Oil. Defendant Garton knew the purpose of these letters was to induce investors to send completion fees to co defendant Michael Smith and his companies.

4. The maximum statutory punishment for Count 1 is imprisonment for not more than 20 years, a fine of not more than $ 250,000, and a term of supervised release of not more than 3 years. A mandatory special assessment of $100 applies, and the Defendant will pay this assessment to the U.S. District Court Clerk at the time of the entry of the plea.

5. Pursuant to Rule 11(c)(1)(B), the United States and the Defendant recommend the following provisions of the U.S. Sentencing Guidelines be included in any sentencing guidelines calculation, and they may object to or argue in favor of the inclusion of other guideline provisions. This recommendation does not bind the Court.

(a) United States Sentencing Guidelines (U.S.S.G.), November 1, 2008, manual, will determine the Defendant's guideline range.

5

(b) Pursuant to U.S.S.G. § 1B1.3, the Defendant's relevant conduct includes the conduct alleged in Counts 2 through 21 of the Indictment.

(c) Pursuant to U.S.S.G. § 2B1.1(a) the base offense level is 7.

(d) Pursuant to U.S.S.G. § 2B1.1(b)(1)(J), increase the offense level by 18 levels because the amount of loss exceeded $2,5000,000.

(e) Pursuant to U.S.S.G. § 2B1.1(b)(3), increase the offense level by 4 levels because the offense involved 50 or more victims.

(f) Pursuant to U.S.S.G. § 2B1.1(b)(9), increase the offense level by 2 levels because the offense involved sophisticated means.

(g) Pursuant to U.S.S.G. § 3E1.1 and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant's timely notice of intent to plead guilty.

(h) The Defendant acknowledges that restitution to victims is due and owing pursuant to U.S.S.G. § 5E1.1, but there is no agreement as to the amount of restitution or to the identity of the victims and the parties are free to argue to the Court which of the investment loss incurred by investors should or should not be included in the amount of restitution to be ordered paid.

(i) The parties agree that the Defendant Ray Garton's business, Mammoth Geophysical, was paid between $186,471 and $ 247,730.85 from February of 2003 through February of 2008 due to Garton's employment as a geologist for co defendant Michael Smith, Target Oil, and Kentucky Indiana. A final number will be provided to the Court at or before sentencing. Co defendant Michael Smith and his companies paid an additional approximately $26,500 on behalf of Defendant Ray Garton to support dinosaur paleontology and bone preservation efforts.

6. No agreement exists about the Defendant's criminal history category pursuant to U.S.S.G. Chapter 4.

6

7.   The Defendant waives the right to appeal and the right to attack collaterally the guilty plea and conviction but does not waive the right to appeal any sentence, including any order of restitution.

8.   The United States will recommend releasing the Defendant on the current conditions for future court appearances if the Defendant does not violate the terms of the order setting conditions of release.

9.   The Defendant will forfeit to the United States all interest in the property listed in Count 26 of the Indictment, if any,  and will execute any documents necessary for this forfeiture.

10.   After pleading guilty, the Defendant will make a full and complete financial disclosure to the United States and will assist the United States in the gathering of all financial information. The Defendant will complete and sign a financial disclosure statement or affidavit, will sign financial releases prepared by the United States, and will submit to a deposition in aid of collection at times and places that the United States directs.  The Defendant agrees that any unpaid penalty will be submitted to the United States Treasury for offset.  If the Defendant fails to comply with any of the provisions of this paragraph, the United States will not move the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may in its discretion argue to the Court that the Defendant should not receive a two-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a).

7

11. If the Defendant violates any part of this Agreement, the United States may void this Agreement and seek an indictment for any violations of federal laws, and the Defendant waives any right to challenge the initiation of additional federal charges.

12. This document and the sealed supplement contain the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant. The United States has not made any other promises to the Defendant.

13. This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

14. The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary.

JAMES A. ZERHUSEN
UNITED STATES ATTORNEY

Date: _9-3-09_    By: _____

Frances E. Catron
Assistant United States Attorney

Date: _8-14-09_      _____

E. Ray Garton
Defendant

Date: _9/3/09_      _____

8

Willis G. Coffey
Attorney for Defendant

**APPROVED**, this $\underline{3^{d}}$ day of $\underline{September}$, $\underline{2009}$.

UNITED STATES DISTRICT JUDGE

9